UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| JCI COMMUNICATIONS, INC., d/b/a NETVERSANT—NEW ENGLAND, Plaintiff, | ) | CIVIL ACTION NO. 02-10537-RWZ |
| v. | ) | |
| INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS UNION, LOCAL 103, Defendant. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Defendant/Cross-Plaintiff International Brotherhood of Electrical Workers, Local 103 ("Local 103"), submits this memorandum of law in support of its motion for summary judgment.

## I. INTRODUCTION

The petition and cross-petition in this case concern an award by a Joint Conference Committee pursuant to a collective bargaining agreement. In 1998, Plaintiff/Cross-defendant, JCI Communications, Inc., d/b/a NetVersant-New England ("NetVersant"), signed a Letter of Assent with Local 103, agreeing to the terms of a collective bargaining agreement, including its binding dispute resolution procedure. NetVersant subsequently failed to abide by that agreement and Local 103 grieved NetVersant's contract violations. NetVersant participated in the contractual dispute resolution procedure, without challenge to the validity of the Letter of Assent, the fairness of the Joint Conference Committee or any member thereof, or the jurisdiction of the Joint Conference Committee to resolve the dispute. Instead, NetVersant defended on the merits, submitting to the Joint Conference Committee a partially executed document that NetVersant contended permitted it



to assign bargaining unit work to members of International Brotherhood of Electrical Workers Local 2222 ("Local 2222") without regard to its obligations under the collective bargaining agreement. After reviewing the proffered document, the Joint Conference Committee rejected NetVersant's defense and issued an award in Local 103's favor.

The Joint Conference Committee's decision rejecting NetVersant's defense is quite unremarkable. The Joint Conference Committee found that the purported jurisdictional agreement on which NetVersant relied was not signed by either Local 103 or Local 2222, and had not been approved by the International President of the International Brotherhood of Electrical Workers ("IBEW"), despite the IBEW Constitution's requirement that Local Union agreements shall be null and void without the International President's approval. The Joint Conference Committee also noted that NetVersant had presented no evidence that it had a current executed collective bargaining agreement with Local 2222 that would justify work assignments to Local 2222 members, even if the agreement was valid.

NetVersant now seeks to vacate the Joint Conference Committee's decision, claiming that the Joint Conference Committee acted in excess of its jurisdiction in rejecting NetVersant's defense, that the Joint Conference Committee was biased and that the Letter of Assent was procured by fraud. Local 103 vigorously disputes NetVersant's claims of wrongdoing by the Joint Conference Committee or the union. For purposes of this motion, however, Local 103 needs no determination of these factual matters, and opposes NetVersant's claim that it is entitled to discovery. Quite simply, having submitted this dispute on the merits to the Joint Conference Committee without objection or reservation, NetVersant is barred from raising these claims here.

## II. STATEMENT OF FACTS

The Electrical Contractors' Association of Greater Boston, Inc., Boston Chapter, National Electrical Contractors Association ("Electrical Contractors' Association") entered into a multiemployer collective bargaining agreement with Local 103 on September 1, 1997. NetVersant's Petition to Vacate Arbitration Award ("NetVersant's Petition"), ¶ 7.

On October 1, 1998, NetVersant entered into to a Letter of Assent with Local 103. Letter of Assent, attached as Exhibit 1 to the Affidavit of Rich Gambino ("Gambino Affidavit"); see also NetVersant's Answer to Defendant's Cross Petition to Confirm Arbitration Award ("NetVersant's Answer"), ¶ 3 (admitting that document "appears to be a letter of assent dated October 1, 1998" and stating that "the document speaks for itself"); Gambino Affidavit, ¶ 10 (Exhibit 1 is a copy of the Letter of Assent NetVersant submitted to the Joint Conference Committee). Pursuant to the Letter of Assent, NetVersant authorized the Electrical Contractors' Association "as its collective bargaining representative for all matters contained in or pertaining to the [then-] current and any subsequent approved Telecommunications labor agreement" between the Electrical Contractors' Association and Local 103. Letter of Assent, Gambino Affidavit, Exh. 1 (footnotes providing instructions for filling out form document omitted). Pursuant to the Letter of Assent, in so authorizing the Electrical Contractors Association as its collective bargaining representative, NetVersant "agree[d] to comply with, and be bound by, all of the provisions contained in said current and subsequent approved labor agreements." Id.

The then-current Telecommunications labor agreement expired February 29, 2000, and the Electrical Contractors' Association continued to deal with Local 103 as its exclusive representative for work covered by the Telecommunications Agreement. NetVersant's Petition, ¶ 7 and Exh. 1 thereto. Specifically, the Electrical Contractors Association entered into a subsequent approved

Telecommunications labor agreement ("the Collective Bargaining Agreement"), dated March 1, 2000. Gambino Affidavit, ¶ 4 and Exh. 2 (Collective Bargaining Agreement); see also NetVersants' Answer, ¶ 4 (admitting that document appears to be an agreement between Local 103 and Electrical Contractors' Association and stating that the document "speaks for itself").

The Collective Bargaining Agreement provides for the following dispute resolution procedure:

> Section 1.03 There shall be no stoppage of work either by strike or lockout because of any proposed changes in the Agreement or dispute over matters relating to this Agreement. All such matters must be handled as stated herein.
>
> Section 1.04 There shall be a Joint Conference Committee of three (3) representing the Union and three (3) representing the Employer. It shall meet regularly at such stated times as it may decide. However, it shall also meet within forty-eight (48) hours when notice is givn by either party. It shall select its own Chairman and Secretary.
>
> Section 1.05 All grievances or questions in dispute shall be adjusted by the duly authorized representatives of each of the parties to this Agreement. In the event that these two are unable to adjust any matter within 48 hours, they shall refer the same to the Joint Conference Committee.
>
> Section 1.06 All matters coming before the Joint Conference Committee shall be decided by majority vote. Four members of the Committee, two from each of the parties hereto, shall be a quorum for the transaction of business, but each party shall have the right to cast the full vote of its membership and it shall be counted as though all were present and voting.
>
> Section 1.07 Should the Joint Conference Committee fail to agree or to adjust any matter, such shall then be referred to the Council on Industrial Relations for the Electrical Contracting Industry for adjudication. The Council's decision shall be final and binding on both parties hereto.

Collective Bargaining Agreement, Sections 1.03 – 1.07, Gambino Affidavit, Exhibit 2; see also NetVersant's Answer, ¶ 6 (admitting that the document includes provisions for a grievance and

arbitration procedure).[1]

In early 2002, Local 103 referred a "grievance" or "question in dispute" to the Joint Conference Committee under the procedure set forth in the Collective Bargaining Agreement. Gambino Affidavit, ¶ 5 and Exh. 3 (January 21, 2002 letter from Richard Gambino to NetVersant). Local 103 claimed that NetVersant was violating the Collective Bargaining Agreement by assigning bargaining unit work covered by the Collective Bargaining Agreement to non-bargaining unit members and by subcontracting bargaining unit work in breach of the Collective Bargaining Agreement. Gambino Affidavit, ¶ 5 and Exh. 3; see also NetVersant's Petition, ¶ 18 ("[o]n January 21, 2002, Local 103 filed charges against NetVersant-New England alleging that it violated the Telecommunications Agreement by *inter alia* giving work to employees who were not members of Local 103"); NetVersant's Answer, ¶ 7 (January 21, 2002 letter from Richard Gambino to NetVersant "speaks for itself").

On or about January 24, 2002, the Joint Conference Committee informed NetVersant that a meeting of the Joint Conference Committee had been called for February 4, 2002, to hear the grievance brought against NetVersant. Gambino Affidavit, ¶ 6 and Exh. 4; see also Plaintiff's Answer, ¶ 8 (January 24, 2002 letter from Glenn Kingsbury to NetVersant "speaks for itself").

On February 4, 2002, the Joint Conference Committee convened to hear the charges brought by Local 103 against NetVersant, including the charge that NetVersant was violating the Collective Bargaining Agreement by assigning bargaining unit work covered by the Collective Bargaining

[1] For the sake of accuracy, Local 103 is directing the Court's attention to the grievance and arbitration procedures set forth in the current Collective Bargaining Agreement as the grievance was filed under this current Agreement. These sections, however, are identical to the same-numbered paragraphs in the 1997 Telecommunications agreement attached as Exhibit 1 to NetVersant's Petition. NetVersant has acknowledged that Section 1.05 of the 1997 Agreement "contains a procedure for resolution of grievances through a Joint Conference Committee" and that "[a] Joint Conference Committee is comprised of three members of Local 103 and three employer representatives from the Electrical Contractor Association whose members contract with Local 103." NetVersant's Petition, ¶ 19.

Agreement to non-bargaining unit members and that NetVersant was failing to pay wages and benefits required by the Collective Bargaining Agreement. Gambino Affidavit, ¶ 7-9; see also Joint Conference Decision, Gambino Affidavit, Exh. 6; Summary of Charges Submitted by Local 103 to the Joint Conference Committee, Gambino Affidavit, Exh. 7; NetVersant's Answer, ¶ 9 (admits that the Joint Conference Committee met on February 4, 2002 to hear charges against NetVersant and that Exhibit 6 "speaks for itself").

NetVersant appeared at the hearing and indicated that it was prepared to go forward. Joint Conference Decision at 1, Gambino Affidavit, Exh. 6; see also Gambino Affidavit, ¶ 9 (same). At no time prior to or during the hearing did NetVersant: object to the particular individuals, or any one of them, serving on the Joint Conference Committee; contend that the Letter of Assent had been procured by fraud; or contend that the Joint Conference Committee was without authority or jurisdiction over this dispute. Gambino Affidavit, ¶ 9; see also Joint Conference Decision, Gambino Affidavit, Exh. 6 (no such objections noted).

NetVersant argued to the Joint Conference Committee that a separate jurisdictional agreement permitted it to assign bargaining unit work to Local 2222. Joint Conference Award, Gambino Affidavit, Exh. 6; see also NetVersant's Petition, ¶ 21(b) (NetVersant "argued to the Joint Conference Committee that . . . [i]t assigned work to employees in Local 103 and Local 2222 pursuant to its agreements with each local, the jurisdictional agreement with the International Unoin and past practice"). NetVersant submitted to the Joint Conference Committee a copy of the purported agreement to support NetVersant's contention that it had not violated the Collective Bargaining Agreement. Joint Conference Decision, pages 1, 3, Gambino Affidavit, Exh. 6; Purported Agreement, Gambino Affidavit, Exh. 8.

The purported jurisdictional agreement on which NetVersant relied appears to have been

signed by NetVersant and by IBEW Vice President Frank J. Carroll. Purported Agreement, Gambino Affidavit, Exh. 8, page 2. The document also identifies Local 103 and Local 2222 as parties to the agreement. Id., page 1, first unnumbered paragraph. The document has signature lines for both Local 103 and Local 2222, but these two lines are blank. Id., page 2.

On February 22, 2002, the Joint Conference Committee issued an Award in favor of Local 103. Joint Conference Decision, Gambino Affidavit, Exh. 6. The Joint Conference Committee concluded that "the evidence supports that a substantial number of employees have been employed by NetVersant/JCI to perform work covered by the Collective Bargaining Agreement but were not granted coverage under the Collective Bargaining Agreement" and that NetVersant had stipulated that it had improperly subcontracted work at one site. Id., page 3-4. With regard to NetVersant's "reliance on the . . . alleged Agreement," the Joint Conference Committee found the purported jurisdictional agreement had no effect on the dispute before it since: (1) the document was not signed by either Local 103 or Local 2222, (2) the purported agreement was not approved by the IBEW International President despite a requirement in the International's Constitution that agreements entered into by Local Unions must be approved by the International President; and (3) NetVersant had submitted no evidence of a current executed agreement with Local 2222 that would justify assignment of work to members of that Union under the purported agreement. Id., page 3.

The Joint Conference Committee ordered NetVersant to make Local 103 whole and to provide Local 103 with certain records and accountings. Id., page 4. NetVersant has not complied with the Award. NetVersant's Answer, ¶ 16.

## III. ARGUMENT

### A. Standard of Review

It is well-settled that "judicial review of an arbitration decision is extremely narrow and

extraordinarily deferential" (The Providence Journal Co. v. Providence Newspaper Guild, 271 F.3d 16, 19 (1st Cir. 2001); see also Bull HN Information Sys. v. Hutson, 229 F.3d 321, 330 (1st Cir. 2000) (same); Wheelabrator Envirotech Operating Services v. Massachusetts Laborers Dist. Council Local 1144, 88 F.3d 40, 43 (1st Cir. 1996) (same)) and that "'[j]udicial review of arbitral decisions is among the narrowest known in law.'" Coastal Oil of New England v. Teamsters Local A/W Int'l Brotherhood of Teamsters, 134 F.3d 466, 468 (1st Cir. 1998) (quoting Maine Cent. R.R. Co. v. Bhd. Of Maintendance of Way Employees, 873 F.2d 425, 428 (1st Cir. 1989)). "A court's review of an arbitration award is highly deferential because the parties 'have contracted to have disputes settled by an arbitrator' and thus, 'it is the arbitrator's view of the facts and of the meaning of the contract that they have agreed to accept.'" Bull HN Information Sys., 229 F.3d at 330 (quoting United Paperworkers Int'l Union v. Misco, 484 U.S. 29, 38, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987)); see also Eastern Assoc. Coal Corp. v. United Mine Workers of America, District 17, 531 U.S. 57, 121 S.Ct. 462, 466, 148 L.Ed.2d 354 (2000) (quoting Steelworkers v. Enterprise Wheel & Car Corp., 363 U.S. 594, 599, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960)) (the parties to a collective bargaining agreement "have 'bargained for' the 'arbitrator's construction' of their agreement").

Moreover, even as to the question of whether a decision is in excess of the jurisdiction, review is circumscribed. Although an arbitral award may be vacated where an arbitrator has acted in excess of its jurisdiction, "[t]hat a court would have decided an issue differently is not a basis for overruling an arbitrator if the arbitrator 'even arguably acted within the scope of his authority.'" Coastal Oil of New England, supra, 134 F.3d at 468 (quoting Misco, supra, 484 U.S. at 38, 108 S.Ct. at 371) (emphasis added). Moreover, "'[a]n arbitrator's view of the scope of the issue . . . is entitled to the same . . . deference normally accorded to the arbitrator's interpretation of the collective bargaining agreement itself.'" Id. (quoting Larocque v. R.W.F., 8 F.3d 95, 97 (1st Cir.

1993)).

Nor are these standards any different when the agreed upon dispute resolution procedure is a Joint Conference Committee rather than an arbitration. "The Supreme Court has consistently treated the decisions of joint committees and of arbitrators identically." Early v. Eastern Transfer, 699 F.2d 552, 559-60 (1st Cir. 1983) and cases cited therein. As the Third Circuit has explained:

> "It is not arbitration per se that federal policy favors, but rather final adjustment of differences by a means selected by the parties. If the parties agree that a procedure other than arbitration shall provide a conclusive resolution of their differences, federal labor policy encourages that procedure no less than arbitration. A determination made pursuant to that chosen procedure is no less enforceable in a federal court than is an arbitration award."

Teamsters Local Union No. 30 v. Helms Express, 591 F.2d 211, 215 (3d Cir. 1979) (quoting United Mine Workers of America, District No. 2 v. Barnes & Tucker Co., 561 F.2d 1093, 1096 (3d Cir. 1977)).

### B. The Joint Conference Committee Did Not Act in Excess of Its Jurisdiction In Rejecting NetVersant's Defense

As a threshold matter, the dispute as submitted by Local 103 was clearly within the jurisdiction of the Joint Conference Committee. The Collective Bargaining Agreement itself is extremely broad, providing, without limitation, that "[a]ll grievances or questions in dispute" that cannot be adjusted by the representatives of each party shall be referred to the Joint Conference Committee. Collective Bargaining Agreement, § 1.05, Gambino Affidavit, Exh. 2. Moreover, the dispute at issue here clearly concerned the terms of the Collective Bargaining Agreement, as Local 103 contended that NetVersant "is violating [the Collective Bargaining] Agreement by assigning bargaining unit work covered by the . . . Agreement to non-bargaining unit members and by subcontracting bargaining unit work in breach of the . . . Collective Bargaining Agreement." Gambino Affidavit, Exh. 3 (Letter from Richard Gambino to NetVersant); see also Gambino

Affidavit, ¶ 5. At the hearing, Local 103 set forth in detail the specific provisions of the Collective Bargaining Agreement that it contended had been violated by NetVersant. Summary of Charges Submitted by Local 103 to the Joint Conference Committee, Gambino Affidavit, Exh. 7; see also Gambino Affidavit, Exh. 5 (cover letter from Glenn Kingsbury to NetVersant detailing that "the Joint Conference Committee convened as an arbitrating authority . . . to hear charges brought by Local 103, IBEW against NetVersant/JCI for violations of Sections 2.01(b), 2.02, 2.04, 3.01(k), 4.01, 4.02, 4.03, 4.04, 4.05, 4.06, 4.07, 4.08, Article V (Sections 5.01 – 5.13), 6.07, 6.13, 6.3, 6.41, 6.42, 7.04, Appendix A of the [Collective Bargaining] Agreement"); Joint Conference Decision, page 1, Gambino Affidavit, Exh. 6 (listing same contractual provisions).

NetVersant defended against Local 103's grievance by submitting to the Joint Conference Committee the purported agreement, arguing on the merits that under the terms of the proffered document, NetVersant's assignment of work to non-bargaining unit members was proper. See NetVersant's Petition, ¶ 21(b) (NetVersant "argued to the Joint Conference Committee that . . . [i]t assigned work to employees in Local 103 and Local 2222 pursuant to its agreements with each local, the jurisdictional agreement with the International Union and past practice"). At the same time, it made no argument that this document somehow divested the Joint Conference Committee of jurisdiction over the dispute, or that it was reserving its right to challenge the Joint Conference Committee's jurisdiction.

The First Circuit has made clear that while a party may proceed in arbitration on the merits of a dispute and still challenge the arbitrator's jurisdiction, to do so it must preserve that objection. See Dorado Beach Hotel Corp. v. Union de Trabajadores do la Industria Gastonomica de Puerto Rico Local 610 of the Hotel Employees and Restaurant Employees International Union, 959 F.2d 2, 4 (1st Cir. 1992) (rejecting employer's challenge to arbitrator's decision awarding punitive damages

under Puerto Rico law where employer, inter alia, "asserted *no* reservation or *objection* whatever in its arbitral submission") (emphasis in original); see also Tejidos de Coamo v. International Ladies' Garmet Workers' Union, 22 F.3d 8, 14 (1st Cir. 1994) (company does not waive "an explicitly asserted jurisdictional objection by defending on the merits") (emphasis added); R.W. Granger & Sons v. Eastern Massachusetts Carpenters and Carpenters Local 275 of the United Brotherhood of Carpenters and Joiners of America, 686 F.Supp. 22, 26 (D. Mass. 1988) ("participation in an arbitration hearing on the merits does not constitute a waiver of the right of review by the federal courts on the issue of arbitrability if the respondent in arbitration explicitly preserves its challenge to jurisdiction") (emphasis added). Having submitted its defense to the Joint Conference Committee on the merits and without reservation, NetVersant cannot now claim that the Joint Conference Committee's rejection of the defense was in excess of its jurisdiction.

Numerous cases have considered and rejected similar contentions that the arbitrator acted in excess jurisdiction when ruling on an issue submitted by the party challenging the award. These cases analyze the issue in two different ways. Some courts view the matter as one where consent to arbitration is implied by the conduct of the parties; others view the matter as one of waiver. Under either view, once the matter is submitted to the arbitrator without objecting to the arbitrator's authority to resolve it, a court will not vacate the award on the theory that it was in excess of jurisdiction.

"[P]arties can manifest their agreement to arbitrate by conduct, for example, by submitting without objection to arbitration of a dispute. . . . [U]nconditional submission of an issue to arbitration, without any objection to the arbitrator's authority to decide that issue 'cede[s]' authority to the arbitrator, or represents 'consent' to arbitration of that issue. Rock-Tenn Co. v. United Paperworkers International Union, 184 F.3d 330, 333 (4th Cir. 1999). "'[A] party to arbitation

cannot voluntarily engage in the arbitration of the issues submitted to the arbitrator and then attack the award on grounds not raised before the arbitrator." Id. (quoting United Food & Comm. Workers v. Marval Poultry Co., 876 F.2d 346, 352 (4th Cir. 1989). "In such circumstances 'there is no justification for drawing the inference that the arbitrator may have exceeded his authority.'" Id. (quoting International Chem. Workers Union, Local No. 566 v. Mobay Chem. Corp., 755 F.2d 1107, 1112 (4thth Cir. 1985). "Thus, even when a party could have refused arbitration in the first instance, and even when the issue resolved by the arbitrator is one 'of law,' if that party 'voluntarily and unreservedly submits an issue to arbitration, he cannot later argue that the arbitrator had no authority to resolve it.'" Id. (quoting Jones Dairy Farm v. Local No. P-1236, United Food & Commercial Workers Int'l Union, 760 F.2d 173, 175-76 (7thth Cir. 1985)); see also Dreis & Krump Mfg. v. International Association of Machinists and Aerospace Workers, District No. 8, 802 F.2d 247 (7th Cir. 1986) ("by consenting to submit the grievance to arbitration without any reservations, the company waived the argument that is the premise of its suit – that the arbitrator acted outside of his jurisdiction"); Teamsters Local Union No. 764 v. J.H. Merritt and Co., 770 F.2d 40 (3d Cir. 1985) (employer voluntarily submitted its dispute to arbitration and is accordingly bound by decision by board; alternatively, employer waived its right to contest board's jurisdiction in district court by failing to raise its jurisdictional objection to the board); Fortune, Alsweet & Eldridge v. Daniel, 724 F.2d 1355, 1357 (9th Cir. 1983) (per curiam) (party may not submit a claim to arbitration and then challenge the authority of the arbitrator to act after receiving an unfavorable result); Piggly Wiggly Operators' Warehouse v. Piggly Wiggley Operators' Warehouse Indep. Truck Drivers Union, Local No. 1, 611 F.2d 580, 584 (5th Cir. 1980) (where neither party questioned the arbitrability of the dispute stated in the grievance and the entire grievance was presented the arbiter, "[o]n whatever basis it rests, waiver, estoppel or new contract, the result is that

the grievance submitted to the arbiter defines his authority without regard to whether the parties had a prior legal obligation to submit the dispute").

The facts and the court's holding in Rock-Tenn Co. are instructive. The employer there divided its facilities into two separate divisions and entered into separate collective bargaining agreements with two different local unions. Employees of the Mill division performed work for the Converting division (which paid Mill management for their time), until the Converting division contracted the work to an outside vendor. The local representing the Mill employees then filed a grievance against the employer and brought the matter to arbitration. The employer proceeded with the arbitration without objecting to the arbitrator's authority, but argued on the merits that under the collective bargaining agreement, the employer was the Mill Division only, whereas the contracting out had been done by the Converting division. After the arbitrator ruled in the union's favor, the employer defended against the union's petition to enforce on the ground that the arbitrator was in excess of his jurisdiction because the collective bargaining agreement was between the local union and the Mill Division only. The Fourth Circuit rejected this argument:

> [b]y word and deed, the parties repeatedly demonstrated their intent to allow the arbitrator to decide whether the dispute was arbitrable. Of course, the parties disagreed as to the merits of whether the employee violated the collective bargaining agreement with Local 1014 – specifically, the parties disagreed as to whether the employer that made the contracting-out decision was bound by the collective bargaining agreement with Local 1014 – but they agreed that the arbitrator should decide this question

Id. at 335. "In sum, although during arbitration Rock-Tenn argued that Mill and Converting were separate operations and thus that Converting' decision to contract out work formerly performed by Mill employees at the Converting facility did not violate the collective bargaining agreement with Local 1014, Rick-Tenn never objected in any manner to the arbitrator's authority to resolve the question of whether such a breach had occurred. Because Rock-Tenn thus clearly and unmistakably

evidenced its intent to have the arbitrator determine the arbitrability and merits of this dispute, it cannot now maintain 'that the arbitrator had no authority to resolve it.'" Id. at 336 (quoting Jones Dairy, 760 F.2d at 175-76).

Similarly here, while NetVersant argued to the Joint Conference Committee that the proffered document relieved it of its obligations under the Collective Bargaining Agreement, it did not argue that the Joint Conference Committee lacked jurisdiction to rule on the merits of its defense. See Joint Conference Decision, Gambino Affidavit, Exh. 6 (no such objections or argument noted); see also Gambino Affidavit, ¶ 9 (same). Having submitted the issue on the merits, and failed to reserve any objections to the Joint Conference Committee's jurisdiction, NetVersant's protestations must be rejected.

NetVersant also asserts that the Joint Conference Committee decision was without authority to reject NetVersant's reliance on the purported jurisdictional agreement involving Local 2222 since only Local 103, and not Local 2222, was a party to the Collective Bargaining Agreement." NetVersant's Petition, ¶ 29. But federal labor law makes clear that an arbitration agreement between only some of the parties to a dispute may still be enforced. In Carey v. Westinghouse Electric Corporation, 375 U.S. 261, 84 S.Ct. 401, 11 L.Ed.2d 320 (1964), the union filed a grievance asserting that certain employees, represented by another union, were performing bargaining unit. The employer refused to arbitrate on the ground that the controversy presented a representation matter for the National Labor Relations Board ("NLRB"). The state court refused to compel arbitration. The Supreme Court reversed, explaining:

> However the dispute be considered – whether one involving work assignment or one concerning representation – we see no barrier to use of the arbitration procedure. If it is a work assignment dispute, arbitration conveniently fills a gap and avoids the necessity of a strike to bring the matter to the Board. If it is a representation matter, resort to arbitration may have a pervasive, curative effect even though one union is not a party.

375 U.S. at 272, 84 S.Ct. at 409. Accordingly, the fact that the defense raised by NetVersant also concerned Local 2222 did not deprive the Joint Conference Committee from determining the issue for purposes of the resolving the dispute before it.[2]

### C. NetVersant Has Waived Its Claim of Bias

NetVersant also challenges the Joint Conference Committee decision on the ground that the employer representatives on the Committee were "competitors" of NetVersant and therefore biased. NetVersant's Petition, ¶ 1, 29-30. This claim is frivolous on its face, as NetVersant, by its Letter of Assent, agreed to decision-making by a panel of union representatives and representatives of other employer-members of the Electrical Contractors' Association. Collective Bargaining Agreement, § 1.05, Gambino Affidavit, Exh. 2. But even if NetVersant could claim that the particular representatives on the Joint Conference Committee had some greater competitive interests than other employer members of the Electrical Contractors' Association (which Local 103 disputes), "[t]he critical weakness in this contention is the . . . failure to have raised the issue of . . . purported bias before the joint committee." Early v. Eastern Transfer, 699 F.2d 552, 558 (1st Cir. 1983). As the First Circuit has explained:

> In the absence of exceptional circumstances, we will not entertain a claim of personal bias where it could have been but was not raised at the hearing to which it applies. This is the accepted rule in arbitration cases . . . Had the [party] objected, [the challenged committee member] might have withdrawn in favor of some other . . . official. . . . [W]e cannot accept that parties have a right to keep two strings in their bow – to seek victory before the tribunal and then, having lost, seek to overturn it for bias never before claimed.

---

[2] Local 103 does not dispute that an arbitration decision could be vacated if it conflicted with an NLRB decision resolving jurisdictional issues between the parties or others. See e.g. T. Equipment Corp. v. Massachusetts laborers' District Council, 166 F.3d 11, 16 (1st Cir. 1999). Here, however, no such NLRB proceeding has been initiated. Moreover, even if one were, since the arbitration award was rendered prior to any Board decision, the Board would be required to consider the award in its determination. Carey v. Westinghouse, 375 U.S. at 270-71, 84 S.Ct. 401; T. Equipment Corp., 166 F.3d at 18. Accordingly, even the potential for such conflict provides no justification for vacating the decision at this time.

Id.; see also cases cited therein; see also Teamsters Local Union No. 764 v. J.H. Merritt and Co., 770 F.2d 40 (3d Cir. 1985) (a party may not challenge the qualifications of an arbitrator after submitting a dispute to a board of arbitrators whose composition was known by the party before an unfavorable decision was rendered by the board).

The Early court did note that "there might conceivably be cases of fraud so egregious that the failure of an employee to object should be overlooked." Id. But, as in Early, the Joint Conference Committee's decision here was reasonable on its face. The Joint Conference Committee concededly did not permit NetVersant to compete on more favorable terms than other employers bound by the Collective Bargaining Agreement, but it also imposed no more onerous terms. Quite simply, it enforced the level playing field for all competitors to which the members of the Electrical Contractors' Association, including NetVersant, have agreed by way of their Letters of Assent to the Collective Bargaining Agreement.

Moreover, the decision rejecting NetVersant's reliance on the purported agreement is clearly reasonably in light of the undisputed fact that the proffered document had signature lines for, but was unsigned by, Local 103 and Local 2222. Purported Agreement, page 2, Gambino Affidavit, Exh. 8. In addition, while NetVersant complains that the Joint Conference Committee "failed to acknowledge . . . the collective bargaining agreement of the other local" (NetVersant's Petition, ¶ 1), it is undisputed that NetVersant presented no evidence to the Joint Conference Committee of any collective bargaining agreement with Local 2222, let alone a current one. See Joint Conference Committee Decision at 1, Gambino Affidavit, Exh. 6 (NetVersant submitted two documents only, the Letter of Assent and the purported agreement); see also NetVersant's Answer, ¶ 9 (the Joint Conference Committee decision speaks for itself). Indeed, even in this Court, while NetVersant continues to claim that it has a collective bargaining agreement with Local 2222 (see NetVersant's

Petition, ¶ 12), NetVersant has offered no evidence of a current collective bargaining agreement with Local 2222. Instead, the collective bargaining agreement attached to NetVersant's Petition states that it shall terminate on December 31, 1999, unless extended "by mutual agreement, in writing, and signed by the duly authorized representatives of the Parties." NetVersant's Petition, Exhibit 3, page 1 (Duration of Agreement). NetVersant has provided no such writing to support its claim that the agreement was "automatically renewed."

In sum, there are no facts here to show "fraud so egregious" to justify NetVersant's failure to raise the claim of bias before the Joint Conference Committee.

**D. NetVersant Has Also Waived Its Claim of Misrepresentation**

NetVerant also claims that Local 103 made knowingly false statements to get NetVersant to sign the Letter of Assent. NetVersant's Petition, ¶ 22. NetVersant's claim of misrepresentation is difficult even to comprehend. As described above, the purported jurisdictional agreement was signed by NetVersant and by IBEW International Vice President Frank J. Carroll. It had unsigned signature lines for Locals 103 and 2222. NetVersant now claims that Mr. Carroll held himself out as an authorized representative of the IBEW to enter into and bind Local 103 with regard to jurisdictional issues and that Local 103's assertion that the International Constitution requires Local Unions to obtain approval of the International President for jurisdictional agreements somehow gives rise to a claim of misrepresentation against Local 103. NetVersant's Petition, ¶ 17.[3]

On its face, this claim makes no sense. While Mr. Carroll did indeed sign the line above his name on the document, he did not sign for either Local 103 or Local 2222 – again, those lines are blank. Purported Jurisdictional Agreement, page 2, Gambino Affidavit, Exh. 8. Moreover, even if

[3] NetVersant cites as authority for this claim a printout from the IBEW's web site stating that Mr. Carroll is an International Vice President and that his District includes "Connecticut, Maine, Massachusetts, New Hampshire, Rhode Island, and Vermo. See NetVersant's Petition, Exh. 8.

Mr. Carroll had done so, it is unclear how this would give rise to a claim of misrepresentation by Local 103 Nor does NetVersant's claim of surprise regarding the IBEW Constitution's requirement that the International President approve all local union agreements ring true. The Letter of Assent that NetVersant signed specifically states that that agreement is "Subject to the approval of the International President, IBEW." See Letter of Assent, Gambino Affidavit, Exh. 1. Similarly, a 1993 letter from the International President produced by NetVersant states that the "Vice President . . . submitted [Local 2222's agreement] for approval." NetVersant's Petition, Exh. 2. Thus, even on the limited record here it is obvious that NetVersant was familiar with the requirement of approval by the International President.

Moreover, while NetVersant contends that it signed the purported jurisdictional agreement "as a condition precedent to entering into the Telecommunications agreement," (NetVersant's Petition, ¶ 17), the jurisdictional agreement is dated October 2, 1998. Purported Jurisdictional Agreement, page 2, Gambino Affidavit, Exh. 8. That date is one day after, not before, the signing of the Letter of Assent. Letter of Assent, Gambino Affidavit, Exh. 1. Accordingly, the claim that NetVersant relied on the signing of the jurisdictional agreement before entering into the Letter of Assent is contradicted by the documents themselves.

In any event, assuming for purposes of argument that NetVersant had a comprehensible claim of misrepresentation, NetVersant could have resisted the hearing before the Joint Conference Committee on the ground that there was no valid agreement to arbitrate. Having proceeded without objection or reservation, however, this potential challenge to arbitrability is waived, for the reasons set forth in Part B and C above.

NetVersant's contention, in any case, is not that the purported misrepresentation rendered Letter of Assent invalid, but rather that, because of the purported misrepresentations "any

jurisdictional limitations [in the collective bargaining agreement] must be reformed . . . ." NetVersant's Petition, ¶ 22. This argument appears to be no more than a further argument as to the appropriate remedy, and certainly provides no a basis for vacating an arbitration award under the well-established and highly deferential standard of review for such decisions.

### E. The Court Should Award Local 103 Its Attorney's Fees

"[T]he remedies normally available when a party refuses to comply with an enforceable award . . . include attorneys' fees when a party 'without justification' contests an enforceable award. Courier-Citizen Com v. Boston Electrotypers Union No. 11, International Printing & Graphic Communications Union of North America, 702 F.2d 273, 281 (1st Cir. 1983); see also International Assoc. of Heat and Frost Insulators and Asbestos Workers, Local Union No. 6 v. Thormo-Guard Corp., 880 F.Supp. 42, 48 (D. Mass. 1995). Here, where NetVersant proceeded with its defense before the Joint Conference Committee without objection, its attempt to relitigate matters it had waived must be viewed as a refusal to comply with an enforceable award without justification. See Dreis & Krump Mfg. Co. v. International Assoc. of Machinists and Aerospace Workers, District No. 8, 802 F.2d 247, 254 (7th Cir. 1986) (awarding fees to union where the company "should have realized that its suit was [among other reasons] barred by its having submitted to arbitration without reservations. . . ."); Teamsters Local Union No. 764 v. J.H. Merritt and Co., 770 F.2d 40, 42, n. 2 (3d. Cir. 1985) (affirming district court's award of fees where employer argued for first time in court proceeding that Board lacked jurisdiction or authority to decide the dispute).

## IV. CONCLUSION

For all of the foregoing reasons, the Court should grant Local 103's motion for summary judgment. The Court should deny NetVersant's Petition to Vacate, and grant Local 103's petition to

enforce the decision of the Joint Conference Committee. The Court should also award Local 103 its reasonable attorneys' fees.

Respectfully submitted,

INTERNATIONAL BROTHERHOOD OF
ELECTRICAL WORKERS, LOCAL 103

By its attorney,

Indira Talwani, Esq. BBO #645577

**SEGAL, ROITMAN & COLEMAN**
11 Beacon Street, Suite 500
Boston, MA 02108
(617) 742-0208

CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon Andrew C. Pickett and Richard W. Paterniti of Jackson Lewis Schnitzler & Krupman, the attorneys of record for Plaintiff and Cross-Defendant JCI COMMUNICATIONS, INC., d/b/a NETVERSANT-NEWENGLAND by mail on July 19, 2002.

Indira Talwani

Dated: July 19, 2002